**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| JAMES GARRETT, | * |
| | * |
| Plaintiff, | *    CIVIL ACTION NO. 15-00082-B |
| | * |
| vs. | * |
| | * |
| CAROLYN W. COLVIN, | * |
| Commissioner of Social | * |
| Security, | * |
| | * |
| Defendant. | * |

**ORDER**

Plaintiff James Garrett (hereinafter "Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and 1381, *et seq.* On October 9, 2015, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 23). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

I.   **Procedural History**

Plaintiff filed his applications for benefits on March 1, 2011. (Tr. 181-87). Plaintiff alleged that he has been disabled since October 1, 2011,[1] due to "right hand," "ulcers," "chest pain," "right shoulder," "bilateral leg," and "back condition." (Id. at 221, 227).

Plaintiff's applications were denied and upon timely request, he was granted an administrative hearing before Administrative Law Judge Jack F. Ostrander (hereinafter "ALJ") on December 3, 2012. (Id. at 61). Plaintiff attended the hearing with his counsel and provided testimony related to his impairments. (Id. at 65). A vocational expert ("VE") also appeared at the hearing and provided testimony. (Id. at 64). On May 9, 2013, Plaintiff was granted a second administrative hearing before ALJ Ostrander, which he attended with his counsel and again provided testimony. (Id. at 43, 53). In addition, a second VE appeared at the hearing and provided testimony. (Id. at 47). On July 23, 2013, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Id. at 37).

---

[1] Plaintiff originally alleged onset dates of January 6, 2011, and February 27, 2011, but amended the onset date to October 1, 2011. (Tr. 221-22). The ALJ referred to Plaintiff's onset date as February 27, 2011. (Id. at 29). Plaintiff makes no issue of this date.

The Appeals Council denied Plaintiff's request for review on December 24, 2014 (Id. at 1-2). Therefore, the ALJ's decision dated July 23, 2013, became the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). The parties waived oral argument on October 9, 2015 (Doc. 22), and agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  Issue on Appeal

> **Whether the ALJ erred in finding that Plaintiff does not meet the criteria for Listing 12.05B and 12.05C?**

## III. Factual Background

Plaintiff was born on October 1, 1968, and was forty-four years of age at the time of his second administrative hearing on May 9, 2013. (Tr. 43, 222). Plaintiff testified that he was enrolled in special education classes in school and dropped out of school in the eighth grade. (Id. at 76). Plaintiff also testified that he can write his name, but he cannot read. (Id.).

According to Plaintiff's testimony and Work History Report, he last worked in March 2011 as a laborer for a fish hatchery, a job he held for approximately twenty-four years. (Id. at 66,

228, 236).   Plaintiff testified that he liked his job and that he stopped working because of back and hand pain and because his back "wouldn't let [him] bend down." (Id. at 66-67, 71).

Plaintiff testified that he has a "slipped disc" in his back, and he has gout in his right hand which affects his grip. He described the pain in his back and right hand as an eight to ten on a ten-point pain scale. (Id. at 66-67, 69, 78). Plaintiff's medications include Advil, Tramadol, Hydrocodone, Amitriptyline, and Prednisone. (Id. at 68, 262).

Plaintiff testified that he owns his own home, that he has lived alone all of his life, and that he has always handled his own money. (Id. at 72-73, 244). He has never had a checking account; but he can count change and pays his bills with cash or money order. (Id. at 77-78, 250). He has no problems working with or getting along with other people or his boss. (Id. at 72). He testified that he does not have any problems with his memory or concentration, although when he worked, he sometimes had problems following instructions. (Id. at 83-84). He can pay attention all day. (Id. at 252).

Plaintiff testified at the hearing and stated in his Function Report that he spends his time around his house each day, sweeping or mopping, or walking around the yard and playing with his dogs. (Id. at 74, 82). His routine includes getting up in the morning, getting dressed, fixing breakfast, cleaning

4

house, cleaning outside around the house, and watching television. (Id. at 82, 244). He prepares all of his own meals, does all of his own housework and laundry, does all of his own shopping, mows his own lawn, and has no problems with his personal care needs. (Id. at 248-50). He does not need to be reminded to take care of his personal needs or to take medication. (Id. at 249). He visits with friends and family once or twice a week. (Id. at 83, 251). He does not need anyone to accompany him when he goes out. (Id. at 251).

He does not drive or have a driver's license. He took the oral driving test once and failed it. (Id. at 55, 75, 77). When he worked for the fish hatchery, he drove a boat. (Id. at 84). He also uses public transportation. (Id. at 250).

## IV.  **Analysis**

### A.   **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[2]  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that

---

[2] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).   The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.  Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion.").   In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision.  Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

**B.   Discussion**

An individual who applies for Social Security disability benefits must prove his or her disability.  20 C.F.R. §§ 404.1512, 416.912.  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a).   The Social Security regulations

provide a five-step sequential evaluation process for determining if a claimant has proven his disability.[3] 20 C.F.R. §§ 404.1520, 416.920.

In the case *sub judice*, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since February 27, 2011, the alleged onset date, and that he has the severe impairments of mild lumbar degenerative disc disease, bilateral shoulder pain, right hand gout, and status post stab wounds to the chest. (Tr. 29). The ALJ further found that Plaintiff does

---

[3] The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. Id. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

not have an impairment or combination of impairments that meets or medically equals any of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id. at 31).

The ALJ concluded that Plaintiff retains the residual functional capacity (hereinafter "RFC") to perform a range of light work, with the restrictions that Plaintiff "can sit approximately six hours in an eight-hour day; stand and walk approximately six hours in an eight-hour day; frequently handle, finger and feel with his right hand and continuously with his left hand; occasionally push and/or pull with his right hand, but continuously with his left hand; frequently push and/or pull with his right lower foot and frequently with the left foot; occasionally climb ramps, stairs, ladders and scaffolds; occasionally balance, kneel and crawl, but never stoop or crouch due to low back pain; and he is unable to read or write. (Id. at 31). The ALJ also determined that while Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, his statements concerning the intensity, persistence and limiting effects of the alleged symptoms are not credible to the extent that they are inconsistent with the RFC assessment. (Id. at 32).

Utilizing the testimony of a VE, the ALJ found that considering Plaintiff's residual functional capacity for a range of light work, with the stated restrictions, as well as his age,

education, and work experience, Plaintiff is not capable of performing his past work as a fish hatchery laborer (heavy, unskilled) but that he can perform other work such as machine feeder/operator (sedentary, unskilled), and machine operator (light, unskilled). (Id. at 36-37). Thus, the ALJ concluded that Plaintiff is not disabled. (Id.).

The Court now considers the foregoing in light of the record in this case and the issues on appeal.

     1.   **Issue**

     **Whether the ALJ erred in finding that Plaintiff does not meet the criteria for Listing 12.05B and 12.05C?**

Plaintiff argues that the ALJ erred in finding that he lacks the requisite deficits in adaptive functioning to meet the criteria for Listing 12.05B or 12.05C (mental retardation). [4] (Doc. 14 at 4-9). The Commissioner counters that the ALJ did not err in determining that Plaintiff does not satisfy the criteria for Listing 12.05 because the substantial evidence (such as Plaintiff's twenty-four year working history, living

---

[4] The Court notes at the outset that Plaintiff does not take issue with the ALJ's findings related to his physical impairments or with the ALJ's evaluation of the opinions of his treating physician, Dr. Perry Timberlake, M.D., or any other physician, related to the degree of Plaintiff's physical limitations. Rather, Plaintiff argues only that the ALJ erred in failing to find that he met the cognitive criteria for Listing 12.05B and 12.05C. Therefore, the Court's discussion of the medical evidence is limited to this issue.

independently and caring for his own personal needs all of his life, handling his own finances, and getting along with co-workers and bosses) reflects that Plaintiff lacks the adaptive functioning deficits required to meet Listing 12.05. (Doc. 19 at 3-8). Having carefully reviewed the record in this case, the Court agrees that Plaintiff's claim is without merit.

In order for a claimant to meet Listing 12.05B (mental retardation), he must present evidence of "[a] valid verbal, performance, or full scale IQ of 59 or less." Jackson v. Astrue, 2011 U.S. Dist. LEXIS 95629, *12, 2011 WL 3757894, *4 (S.D. Ala. Aug. 25, 2011)(quoting 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05B (2010)). Alternatively, in order for a claimant to meet Listing 12.05C, he must present evidence of "[a] valid verbal, performance or full scale IQ of 60-70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."[5]   20 C.F.R.

---

[5] For purposes of Listing 12.05C, the second prong requirement is met once there is a finding that the claimant has an additional severe impairment because the requirement of "significant work-related limitation of function" "involves something more than 'minimal' but less than 'severe.'" Johnson v. Colvin, 2014 U.S. Dist. LEXIS 13497, *7, 2014 WL 413492, *3 (S.D. Ala. Feb. 3, 2014) (quoting Edwards by Edwards v. Heckler, 755 F.2d 1513, 1515 (11th Cir. 1985)). In this case, the ALJ found Plaintiff's lumbar degenerative disc disease, bilateral shoulder pain, right hand gout, and status post stab wounds to the chest to be severe, and the parties do not dispute that finding. (Tr. 29). Therefore, the second prong of Listing 12.05C, requiring a physical or other mental impairment imposing an additional and

Part 404, Subpart P, Appendix 1 § 12.05(C).

However, before a claimant can meet Listing 12.05B or 12.05C, he must additionally satisfy the "diagnostic description" of mental retardation in Listing 12.05 (the listing category for mental retardation/intellectual disability),[6] which provides that mental retardation "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.05.

In this Circuit, it is presumed that a person's IQ remains fairly constant throughout his or her life, and a valid IQ test score meeting the Listing criteria creates a rebuttable

---

significant work-related limitation of function, is not in dispute in this action.

[6] On August 1, 2013, the Social Security Administration amended Listing 12.05 by replacing the words "mental retardation" with "intellectual disability." See Hickel v. Commissioner of Soc. Sec., 539 Fed. Appx. 980, 982 n.2 (11th Cir. 2013) (citing 78 Fed. Reg. 46,499, 46,501, to be codified at 20 C.F.R. pt. 404, subpt. P, app. 1)). "This change was made because the term 'mental retardation' has negative connotations, and has become offensive to many people. Id. (citations and internal quotation marks omitted). "The Social Security Administration stated that the change does not affect the actual medical definition of the disorder or available programs or services." Id. (citations and internal quotation marks omitted). As in Hickel, this opinion uses the term "mental retardation" and "intellectual disability" interchangeably.

presumption that the condition manifested itself before age twenty-two. Dragg v. Astrue, 2012 U.S. Dist. LEXIS 71717, *6, 2012 WL 1885126, *3 (N.D. Ala. May 23, 2012) (citing Hodges v. Barnhart, 276 F.3d 1265, 1268-69 (11th Cir. 2001)); Jackson, 2011 U.S. Dist. LEXIS 95629 at *12-13, 2011 WL 3757894 at *4. However, the Commissioner may present evidence of the claimant's daily life to rebut the presumption of disability.  Whetstone v. Barnhart, 263 F. Supp. 2d 1318, 1325 (M.D. Ala. 2003) (citing Hodges, 276 F.3d at 1269).  The Eleventh Circuit has held that "a valid I.Q. score is not conclusive of mental retardation if the score is 'inconsistent with other evidence in the record on the claimant's daily activities and behavior.'"[7]   Id. (citing

---

[7] In addressing the "adaptive functioning" aspect of Listing 12.05C, the Eleventh Circuit has sustained the rejection of claims under this Listing where the claimant's IQ score was significantly inconsistent with his/her adaptive functioning, despite a qualifying IQ score.   For example, in Perkins v. Commissioner, Soc. Sec. Admin., 553 Fed. Appx. 870 (11th Cir. 2014), the Eleventh Circuit upheld the ALJ's finding that Listing 12.05C was not met where the plaintiff performed skilled jobs, including as a skilled cook, managed other workers, and made contradictory claims regarding his education and employment history.  Also, in Hickel v. Commissioner, 539 Fed. Appx. 980, 984 (11th Cir. 2013), the Eleventh Circuit held that the ALJ did not err where he acknowledged that the claimant had a valid IQ score between 60 and 70, applied the presumption established by Hodges v. Barnhart, 276 F. 3d 1265, 1268-69 (11th Cir. 2001), and found that the presumption was rebutted by other evidence that showed that the claimant did not have "deficits in adaptive functioning."  In reaching that decision, the court noted that, although the claimant had been enrolled in special education classes, she worked part-time in a nursery, was a high school graduate, prepared simple meals, dressed herself, drove herself to work, attended church regularly, and socialized with friends.

Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992); Popp v.
Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986)).   Accordingly,
the ALJ is tasked with determining whether there is sufficient
evidence (relating to plaintiff's daily life) to rebut the
Hodges presumption.   See Grant v. Astrue, 255 Fed. Appx. 374,
375 (11th Cir. 2007); Hartman v. Colvin, 2014 U.S. Dist. LEXIS

---

Id. at 984-985.  See also Popp, 779 F.2d at 1499-1500 (affirming
finding that Listing 12.05C was not met where the plaintiff had
worked skilled jobs, obtained a college degree, and had
exaggerated his deficits when examined); White v. Colvin, 2015
U.S. Dist. LEXIS 28277, 2015 WL 1013117, *4 (S.D. Ala. Mar. 9,
2015) (The ALJ properly found that, despite a Full Scale IQ
score of 63, the plaintiff did not have significant limitations
in adaptive functioning where the record reflected that,
although the plaintiff had been in special education classes, he
lived alone, maintained his financial affairs, and consistently
worked at several different jobs); Robinson v. Colvin, 2015 U.S.
Dist. LEXIS 43338, 2015 WL 1520431, *11 (S.D. Ala. Apr. 2, 2015)
(where the plaintiff lived independently without a highly
supportive living arrangement, cared for her personal needs, and
had a significant work history, the ALJ properly found that her
Full Scale IQ score of 60 was inconsistent with the record
evidence regarding her daily activities); Johnson, 2014 U.S.
Dist. LEXIS 13497, 2014 WL 413492, at *4 (although the ALJ never
stated that the claimant failed to meet Listing 12.05C, the
ALJ's finding that, despite a Full Scale IQ score of 62, the
claimant had high adaptive skills, i.e., he had the capacity to
take care of his own needs, perform activities of daily living,
and had successfully performed four different jobs since leaving
high school, was sufficient to support his decision that the
claimant was not mentally retarded); Lyons v. Astrue, 2009 U.S.
Dist. LEXIS 128950 (M.D. Fla. May 24, 2009), adopted by 2009
U.S. Dist. LEXIS 48535, 2009 WL 1657388 (M.D. Fla. June 10,
2009)(The ALJ's finding that the claimant did not meet Listing
12.05C was supported by substantial evidence that demonstrated
that the claimant had a high school diploma, was not in special
education classes, completed his own social security forms, and
had earnings from 1983 - 1990 between $13,696 and $18,408 per
year).

91467, *7, 2014 WL 3058550, *3 (S.D. Ala. July 7, 2014).

In addition, as part of the disability determination process, the ALJ is tasked with weighing the opinions and findings of treating, examining, and non-examining physicians. In reaching a decision, the ALJ must specify the weight given to different medical opinions and the reasons for doing so. See Winschel v. Commissioner of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). The failure to do so is reversible error. See Williams v. Astrue, 2009 U.S. Dist. LEXIS 12010, *4, 2009 WL 413541, *1 (M.D. Fla. 2009).

When weighing the opinion of a treating physician, the ALJ must give the opinions "substantial weight," unless good cause exists for not doing so. Costigan v. Commissioner, Soc. Sec. Admin., 2015 U.S. App. LEXIS 2827, *10, 2015 WL 795089, *4 (11th Cir. Feb. 26, 2015) (citing Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004) and Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985)). The opinion of "a one-time examining physician — or psychologist," on the other hand, is not entitled to the same deference as a treating physician. Petty v. Astrue, 2010 U.S. Dist. LEXIS 24516, *50, 2010 WL 989605, *14 (N.D. Fla. Feb. 18, 2010) (citing Crawford, 363 F.3d at 1160). An ALJ is also "required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and

14

psychologists who are also experts in Social Security disability evaluation.'" Milner v. Barnhart, 275 Fed. Appx. 947, 948 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1527(f)(2)(i)). "The ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources." Id. (citing Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991)).

Whether considering the opinions of treating, examining, or non-examining physicians, good cause exists to discredit the testimony of *any* medical source when it is contrary to or unsupported by the evidence of record. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). "Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence." Hogan v. Astrue, 2012 U.S. Dist. LEXIS 108512, *8, 2012 WL 3155570, *3 (M.D. Ala. 2012). The ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (citation omitted); Adamo v. Commissioner of Soc. Sec., 365 Fed. Appx. 209, 212 (11th Cir. 2010) (The ALJ may reject any medical opinion if the evidence supports a contrary finding.).

In this case, the ALJ found that Plaintiff did not meet Listing 12.05B or 12.05C because the evidence of Plaintiff's

twenty-four year work history and daily life do not reflect the deficits in adaptive functioning sufficient to meet Listing 12.05. (Tr. 30). In doing so, the ALJ rejected the opinions of examining psychologist, Dr. John Goff, Ph.D., as being inconsistent with the substantial evidence in the case.[8] (Id. at 30-31, 430-37).

The record shows that Dr. Goff examined Plaintiff on November 15, 2012, and conducted IQ testing, which resulted in a Full Scale IQ score of 58. (Id. at 434-35). Dr. Goff opined that Plaintiff's Full Scale IQ score was compatible with his history, background, and presentation and indicated intellectual functioning in the mild mental retardation range. (Id.). Dr. Goff also noted that Plaintiff tested on a first grade level in reading and math. (Id.). Dr. Goff opined that Plaintiff had difficulty with complex instructions, that he was functionally illiterate and thus would not be able to deal with written instructions, and that he had "numerous adaptive skills deficits present." (Id.). Dr. Goff completed a Mental Source Statement ("MSS") opining that Plaintiff had marked limitations in the areas of carrying out and remembering simple instructions; responding appropriately to supervisors, co-workers, normal work

---

[8] The ALJ appears to have accepted Plaintiff's IQ test scores as valid but found that the substantial evidence showed that Plaintiff lacked the requisite deficits in adaptive functioning to meet Listing 1205B or 12.05C. (Tr. 30).

pressures, and changes in routine; exercising judgment in simple and complex work decisions; and in maintaining activities of daily living.  (Id. at 436-37).   Dr. Goff also opined that Plaintiff had extreme limitations in the areas of understanding and carrying out complex instructions; responding appropriately to the public; and maintaining attention, concentration, or pace for two hours. (Id. at 436).   Dr. Goff opined that Plaintiff demonstrated deficits in adaptive functioning in the areas of self-care, self-direction, work, and functional academic skills. (Id. at 437).

The ALJ rejected Dr. Goff's opinions based on the fact that they were inconsistent with the substantial evidence in the case, including Dr. Goff's own findings.  For example, Dr. Goff opined in the MSS that Plaintiff has "marked" limitations in carrying out and remembering simple instructions.  (Id. at 436). This opinion is contradicted by Dr. Goff's own finding on the same day that Plaintiff "was able to understand, follow and carry out very simple instructions."  (Id. at 435).

In addition, Dr. Goff's opinions in the November 15, 2012, report and MSS (id. at 430-37) are inconsistent with the remaining substantial evidence in the case, including the following: Dr. Goff opined that Plaintiff has "marked" limitations in responding appropriately to co-workers and supervisors (id. at 436-37), which is contradicted by

Plaintiff's testimony that he had *no problems* working with other people or getting along with a boss. (Id. at 72). Dr. Goff also opined that Plaintiff has "extreme" limitations in the area of maintaining attention, concentration, or pace for two hours (id. at 436), which is inconsistent with Plaintiff's testimony and his statements to the Agency that he does not have any problems with his memory or concentration (id. at 83-84), that he can pay attention all day, and that when he starts a task, he finishes it. (Id. at 252). Dr. Goff also opined that Plaintiff had "marked" limitations in his ability to handle changes in routine (id. at 436), which is contradicted by Plaintiff's statement to the Agency that he can handle changes in routine "okay." (Id. at 253).

Dr. Goff also opined that Plaintiff had "marked" limitations in maintaining activities of daily living (id. at 437), which is completely inconsistent with Plaintiff's testimony that he owns his own home, that he has lived alone his entire adult life, that he handles his own money (id. at 72-73, 244, 250), that he can count change and pay his bills with cash or money order (id. at 77-78, 250), that he prepares all of his own meals, does all of his own housework, laundry, and shopping, mows his own lawn, and has no problems with his personal care needs (Id. at 74, 82, 244, 248-50), that he visits with friends and family at least once or twice a week (id. at 83, 251), that

18

he does not need to be reminded to take care of his personal needs or to take his medication (id. at 249), and that he does not need anyone to accompany him when he goes out. (Id. at 251).

In addition to the foregoing, Dr. Goff's opinions in the November 15, 2012, report and MSS (id. at 430-37) are inconsistent with the evidence related to Plaintiff's significant work history, including the fact that he maintained regular, consistent employment for *twenty-four years* at a fish hatchery, where he performed functions including driving a boat. (Id. at 66, 84).

In addition, Dr. Goff's findings are inconsistent with the findings of consultative physical examiner, Dr. Robert MacGregor, M.D., that Plaintiff "is able to bathe, dress, use the toilet, eat, cook, wash dishes, do laundry, and drive without difficulty."[9] (Id. at 282). Dr. MacGregor noted, " [h]e currently does not have a car because it was repossessed." (Id. at 283). Dr. MacGregor continued, "[h]e spends most of his day visiting friends and family, cleaning the house, sitting around and talking, and bathing." (Id.). Based on the foregoing, the Court finds that the ALJ had good cause to reject the opinions

---

[9] While the evidence reflects that Plaintiff does not have a drivers license and that he failed the driving test after attempting the oral examination one time, he does have the ability to drive. (Tr. 75, 282-83).

of evaluating psychologist, Dr. Goff, as being inconsistent with the substantial evidence in the case.

The Court is also aware, as was the ALJ, of Plaintiff's poor academic performance in school and his special education classes. (Id. at 264-70). However, as the ALJ found, even considering this evidence, the substantial evidence in this case reflects a level of functioning that is higher than Plaintiff's Full Scale IQ score of 58 would indicate and does not satisfy the deficits in adaptive functioning required for Listing 12.05.

Finally, Plaintiff argues that the ALJ erred in failing to apply the new definition of adaptive functioning set forth in the most recent edition of the DSM, the DSM-5,[10] and instead

_____

[10] The DSM-5 provides in pertinent part:

> Intellectual disability (intellectual developmental disorder) is a disorder with onset during the developmental period that includes both intellectual and adaptive functioning deficits in conceptual, social, and practical domains. The follow three criteria must be met:
>
> A. Deficits in intellectual functions, such as reasoning, problem solving, planning, abstract thinking, judgment, academic learning, and learning from experience, confirmed by both clinical assessment and individualized, standardized intelligence testing.
>
> B. Deficits in adaptive functioning that result in failure to meet developmental and socio-cultural standards for personal independence and social responsibility. Without ongoing support, the adaptive

applied the old definition of adaptive functioning set forth in
the DSM-IV.   (Doc. 14 at 7-9).   This argument fails for two
reasons.   First, Plaintiff has failed to show that the Social
Security Administration has changed its criteria for evaluating
Listing 12.05 based on the new definition contained in the DSM-
5.   Second, even if the Court were to apply the new definition
of adaptive functioning in the DSM-5, the evidence in this case
that Plaintiff has always lived independently, that he
successfully maintained employment for twenty-four years, that
he has always taken care of his own finances, and that he has
always taken care of his own personal needs establishes that he
lacks the required deficits in adaptive functioning under the
DSM-5 definition as well.   See Hightower v. Commissioner of Soc.
Sec. Admin., 2015 U.S. Dist. LEXIS 110820, *53, 2015 WL 5008668,
*17 (D.S.C. June 12, 2015), *report and recommendation adopted as
modified by,* 2015 U.S. Dist. LEXIS 110117, 2015 WL 5008713
(D.S.C. Aug. 20, 2015) (rejecting a similar argument and noting
that Listing 12.05 has not been updated by the SSA to reflect

---

       deficits limit functioning in one or more
       areas of daily life, such as communication,
       social participation, and independent
       living, across multiple environments, such
       as home, school, work, and community.

       C.   Onset of intellectual and adaptive
       deficits during the developmental period.

DSM-5 (2013); see also Hightower, 2015 U.S. Dist. LEXIS 110820
at *53, 2015 WL 5008668 at *17.

the changes present in the DSM-5, which calls into question its applicability to Listing 12.05); Harley v. Colvin, 2015 U.S. Dist. LEXIS 174876, *14 n.4, 2015 WL 9699531, *5-7 n.4 (E.D.N.C. Dec. 2, 2015), *report and recommendation adopted by* 2016 WL 126372 (E.D.N.C. Jan. 11, 2016) (noting that, because the SSA has not based its definition of intellectual disability in Listing 12.05 solely on the American Psychiatric Association's definition in the DSM-IV, but also on the definitions used by three other leading professional organizations, and that because the SSA has expressly stated that it does not "seek to endorse the methodology of one professional organization over another,"[11] "it remains appropriate to reference the diagnostic criteria in the DSM-IV in applying Listing 12.05C.").

Having reviewed this case at length, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff does not meet Listing 12.05B or 12.05C because the evidence of Plaintiff's work history, medical records, and activities of daily living rebuts the presumption of mental retardation and supports the ALJ's finding that Plaintiff can perform a range of light work, with the stated restrictions, such as a machine feeder/operator (sedentary, unskilled), and machine operator

---

[11] See Harley, 2015 U.S. Dist. LEXIS 174876 at *14 n.4, 2015 WL 9699531 at *5  n.4 (quoting the Technical Revisions to Medical Criteria for Determinations of Disability, 67 Fed. Reg. 20018-01, 2002 WL 661740 at 20022 (SSA 24 Apr. 2002)).

(light, unskilled) (id. at 36-37), and, thus, is not disabled. Accordingly, Plaintiff's claim must fail.

**V.    Conclusion**

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income be **AFFIRMED.**

**DONE** this **28th** day of **March, 2016.**

           **/s/ SONJA F. BIVINS**
      **UNITED STATES MAGISTRATE JUDGE**